UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

NONNIE MARCELLA LOTUSFLOWER,

                            Plaintiff,

        v.

CHARLOTTE HEADLEY, *et al*.,

                            Defendants.

Case No. C23-5558-JCC-SKV

ORDER DECLINING TO SERVE
AMENDED COMPLAINT AND
GRANTING LEAVE TO FILE SECOND
AMENDED COMPLAINT

## I.     INTRODUCTION

This is a *pro se* civil rights action proceeding under 42 U.S.C. § 1983.  Plaintiff Nonnie

Lotusflower is in the custody of the Washington Department of Corrections ("DOC").  She has

submitted to the Court for filing an amended civil rights complaint in which she alleges

violations of her constitutional rights arising out of her confinement at the Washington

Corrections Center for Women ("WCCW") in Gig Harbor, Washington.  Dkt. 12.  The Court has

now screened Plaintiff's amended complaint and has identified deficiencies Plaintiff must correct

before this action may proceed.  The Court therefore declines to order that Plaintiff's amended

complaint be served on Defendants but grants her leave to file a second amended complaint

correcting the deficiencies identified below.

ORDER DECLINING TO SERVE AMENDED
COMPLAINT AND GRANTING LEAVE TO
FILE SECOND AMENDED COMPLAINT - 1

## II.   DISCUSSION

### A.   Claims

Plaintiff identifies five claims for relief in her amended complaint against 19 named Defendants.  Dkt. 12.  Plaintiff alleges violations of her Eighth Amendment right to be free from cruel and unusual punishment and her Fourteenth Amendment rights to due process and equal protection.  *See id*.  She also alleges that Defendants conspired together to violate these rights.  *See id*.  Plaintiff identifies eleven WCCW employees as Defendants in her amended complaint, including: Superintendent Charlotte Headley; Assistant Superintendents Hall and Figuera; Alishia McColl; Lieutenant Simmons; Sergeant Boschulte; Custody Unit Supervisor ("CUS") Avalava; CUS Whittamore; Officer K. Riley; Mr. Benson; and Ms. Franklin.  *Id*. at 6.  Plaintiff also identifies four members of the DOC Headquarters staff as Defendants, including: Secretary Cheryl Strange; K. Rainer; B. Bowen; and C. Newton.  *Id*.  Finally, Plaintiff identifies four former WCCW employees as Defendants, including: Officer Mathews; Assistant Superintendents Chanler and Swain; and Superintendent Cotton.  *Id*.  Plaintiff seeks declaratory and injunctive relief, and damages.  *Id*. at 36-37.

Plaintiff alleges in the first count of her amended complaint that Defendants Headley, McColl, Boschulte, and Simmons violated her Eighth Amendment right to be free from cruel and unusual punishment when they conspired to place her in segregation based on false infractions, knowing that she suffers from mental illness and that she has a documented history of trauma and PTSD related to solitary confinement.  *See* Dkt. 12 at 7-8, 10-12.  Plaintiff claims that Defendants demonstrated deliberate indifference to her mental health and safety, and disregarded an excessive risk of self-harm and suicide.  *See id*. at 12.

Plaintiff further alleges in the first count of her amended complaint that Defendant Headley was deliberately indifferent to a substantial risk of serious harm when she directed that Plaintiff be placed in a strip cell and suicide smock.  Dkt. 12 at 9-10, 12.  Plaintiff claims that because of her severe mental illness she has in place an Individual Behavior Management Plan ("IBMP") that is designed to keep her safe when she is placed on segregation status.  *See id*. at 8-9.  According to Plaintiff, security and mental health staff worked together to develop the IBMP, and Defendant Headley was a part of this process.  *Id*. at 9.  Plaintiff asserts that members of the mental health staff advised Defendant Headley that the IBMP needed to be followed or it could result in serious injury to Plaintiff or death.  *Id*. at 9-10.  Plaintiff further asserts that Defendant Headley overrode the IBMP when she had Plaintiff placed in a strip cell and suicide smock, despite the warnings from the mental health staff, and that this caused her to self-harm and to attempt suicide.  *Id*. at 10-12.

Plaintiff alleges in the second count of her amended complaint that Defendants Headley, McColl, Boschulte, Avalava, and Hall violated her Fourteenth Amendment rights when they failed to afford Plaintiff procedural due process in relation to a prison disciplinary hearing.  Dkt. 12 at 13-17, 19.  Plaintiff asserts that Defendants Headley, McColl, and Boschulte denied her evidence that DOC policy required be collected for the hearing process.  *See id*. at 13, 19.  In particular, Plaintiff claims that Defendants purposely destroyed a video which would have shown the assault she was accused of did not happen, and that they purposely hid or destroyed witness statements relating to the incident in question, thereby denying her a fair hearing.  *Id*. at 13-14, 19.

Plaintiff further asserts that Defendant Avalava, in conducting Plaintiff's disciplinary hearing, lied about the content of certain evidence, and failed to acknowledge evidence favorable

to her.  *See* Dkt. 12 at 14-15, 19.  Plaintiff also claims that Defendant Avalava violated DOC

policy when he failed to have a mental health evaluation conducted prior to the disciplinary

hearing and that he improperly reviewed the evidence with Defendant McColl outside of

Plaintiff's presence.  *Id*. at 15-16.  Finally, Plaintiff asserts that Defendant Hall did not respond

to his appeal of the disciplinary decision in a timely fashion and did not adequately address the

issues raised by Plaintiff on appeal.  *Id*. at 16-17, 20.

Plaintiff also alleges in the second count of her amended complaint that Defendants Riley

and Whittamore violated her Fourteenth Amendment right to procedural due process when they

failed to provide her documents to which she was entitled prior to her administrative segregation

hearing and failed to conduct the hearing by the established deadline.  *See* Dkt. 12 at 17-19.

Plaintiff also asserts that Defendant Headley failed to respond to two of four appeals Plaintiff

submitted in relation to the administrative segregation hearing.  *Id*. at 18, 20.

Plaintiff alleges in the third count of her amended complaint that Defendants Chanler,

Swain, and Cotton violated her Eighth Amendments rights when they failed to adequately

respond to her reports that she was being sexually abused by Defendant Mathews and thus

allowed the sexual assaults to continue.  Dkt. 12 at 21-23.  Plaintiff claims that Defendants

Chanler, Swain and Cotton were obligated to protect her and keep her safe but failed to do so,

causing her to self-harm and attempt suicide.  *See id*. at 22-24.  Plaintiff further alleges in the

third count of her amended complaint that Defendant Mathews was deliberately indifferent to her

safety when he used his position as a correctional officer to sexually abuse Plaintiff and to force

her to perform sexual acts against her will.  *Id*. at 22, 24.

Plaintiff alleges in the fourth count of her amended complaint that Defendants Headley,

Hall, McColl, Figuera, Riley, Whittamore, Boschulte, Franklin, Benson, Avalava, and Simmons

ORDER DECLINING TO SERVE AMENDED
COMPLAINT AND GRANTING LEAVE TO
FILE SECOND AMENDED COMPLAINT - 4

conspired to violate Plaintiff's rights under the Eighth and Fourteenth Amendments. *See* Dkt. 12 at 25-29. More specifically, Plaintiff asserts that Defendants conspired to set her up on false assault and rape infractions, to deny her a fair disciplinary hearing, and to deny her administrative segregation hearings. *See id.* Plaintiff further asserts that Defendants conspired to target and discriminate against her based upon her transgender status, and that they conspired to deprive her of a fully informed PREA (Prison Rape Elimination Act) housing review by providing her with false and misleading facts of an unspecified nature. *See id.* at 26.

Finally, Plaintiff alleges in the fifth count of her amended complaint that Defendants Strange, Rainer, Bowen, Newton, and Headley violated her Fourteenth Amendment right to equal protection when they "created, approved, imposed and used DOC Policy 490-700." Dkt. 12 at 30. Plaintiff asserts that the policy strips away protections and privileges from transgender inmates that are afforded the rest of the prison population. *Id.* In particular, Plaintiff claims that the policy allows the DOC to remove a transgender person from a prison that matches their gender identity based upon safety concerns, and that this means transgender inmates have to fear being sent to a prison that doesn't match their gender identity any time they receive an infraction or have "a PREA filed on them." *See id.* at 30-32. Plaintiff further claims that if a biological female were to engage in similar behavior, they would still only be housed with women. *Id.* at 32. Plaintiff suggests that changes in the policy, those that render transgender inmates such as herself vulnerable to transfer to another facility that may not match her gender identity were enacted just to target and "get rid of" her. *Id.* at 33.

### B.   Legal Standards

Under the Prison Litigation Reform Act of 1996, the Court is required to screen complaints brought by prisoners seeking relief against a governmental entity, officer, or

ORDER DECLINING TO SERVE AMENDED
COMPLAINT AND GRANTING LEAVE TO
FILE SECOND AMENDED COMPLAINT - 5

employee.  28 U.S.C. § 1915A(a).  The Court must "dismiss the complaint, or any portion of the complaint, if the complaint: (1) is frivolous, malicious, or fails to state a claim upon which relief may be granted; or (2) seeks monetary relief from a defendant who is immune from such relief." 28 U.S.C. § 1915A(b); 28 U.S.C. § 1915(e)(2); *see also Barren v. Harrington*, 152 F.3d 1193, 1194 (9th Cir. 1998).

Rule 8(a) of the Federal Rules of Civil Procedure provides that in order for a pleading to state a claim for relief it must contain a short and plain statement of the grounds for the court's jurisdiction, a short and plain statement of the claim showing that the pleader is entitled to relief, and a demand for the relief sought.  The statement of the claim must be sufficient to "give the defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests." *Conley v. Gibson*, 355 U.S. 41, 47 (1957).  The factual allegations of a complaint must be "enough to raise a right to relief above the speculative level." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007).  In addition, a complaint must allege facts to state a claim for relief that is plausible on its face. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

In order to sustain a cause of action under 42 U.S.C. § 1983, a plaintiff must show that (1) she suffered a violation of rights protected by the Constitution or created by federal statute, and (2) the violation was proximately caused by a person acting under color of state law. *See Crumpton v. Gates*, 947 F.2d 1418, 1420 (9th Cir. 1991).  The causation requirement of § 1983 is satisfied only if a plaintiff demonstrates that a defendant did an affirmative act, participated in another's affirmative act, or omitted to perform an act which he or she was legally required to do that caused the deprivation complained of. *Arnold v. Int'l Bus. Mach. Corp.*, 637 F.2d 1350, 1355 (9th Cir. 1981) (citing *Johnson v. Duffy*, 588 F.2d 740, 743-44 (9th Cir. 1978)).

"The inquiry into causation must be individualized and focus on the duties and responsibilities of each individual defendant whose acts or omissions are alleged to have caused a constitutional deprivation." *Leer v. Murphy*, 844 F.2d 628, 633 (9th Cir. 1988). Vicarious liability may not be imposed on a supervisory employee for the acts of their subordinates in an action brought under § 1983. *Lemire v. California Dep't of Corrs. & Rehab.*, 726 F.3d 1062, 1074 (9th Cir. 2013). A supervisor may, however, be held liable under § 1983 "if he or she was personally involved in the constitutional deprivation or a sufficient causal connection exists between the supervisor's unlawful conduct and the constitutional violation." *Jackson* v. *City of Bremerton*, 268 F.3d 646, 653 (9th Cir. 2001).

### C.    Deficiencies

Plaintiff's amended complaint, like her original pleading, is generally deficient because it does not comply with the requirements of Rule 8(a). With limited exceptions, Plaintiff's pleading does not provide a short and plain statement of her claims, but instead contains lengthy and often confusing descriptions of claims, and vague and conclusory allegations of harm. While Plaintiff's amended pleading arguably sets forth some potentially viable claims for relief, the pleading generally lacks sufficient clarity and factual support to state plausible claims for relief against a majority of the named Defendants. The Court will address more specific deficiencies below.

#### 1.    *Deliberate Indifference*

Plaintiff alleges in the first and third counts of her amended complaint that Defendants were deliberately indifferent to her mental health and safety in violation of her rights under the Eighth Amendment. In particular, Plaintiff alleges that Defendants conspired to have her placed in solitary confinement based upon false infractions, knowing this would be detrimental to her

ORDER DECLINING TO SERVE AMENDED
COMPLAINT AND GRANTING LEAVE TO
FILE SECOND AMENDED COMPLAINT - 7

1    mental health and would likely cause her to self-harm. *See* Dkt. 12 at 7-12. Plaintiff further

2    alleges that she was subjected to ongoing sexual assaults by a WCCW corrections officer, and

3    that WCCW officials failed to respond to Plaintiff's reports of sexual assault, thus allowing the

4    assaults to continue. *See id*. at 21-24.

5        The Eighth Amendment imposes a duty upon prison officials to provide humane

6    conditions of confinement. *Farmer v. Brennan*, 511 U.S. 825, 832 (1994). This duty includes

7    ensuring that inmates receive adequate food, clothing, shelter, and medical care, and taking

8    reasonable measures to guarantee the safety of inmates. *Id*. In order to establish an Eighth

9    Amendment violation, a prisoner must satisfy a two-part test containing both an objective and a

10   subjective component. The Eighth Amendment standard requires proof that (1) the alleged

11   wrongdoing was objectively "harmful enough" to establish a constitutional violation; and (2) the

12   prison official acted with a sufficiently culpable state of mind. *Id*. at 834.

13       The objective component of an Eighth Amendment claim is "contextual and responsive

14   to 'contemporary standards of decency.'" *Hudson v. McMillian*, 503 U.S. 1, 8 (1992) (quoting

15   *Estelle v. Gamble*, 429 U.S. 97, 103 (1976)). The state of mind requirement under the subjective

16   component of the Eighth Amendment standard has been defined as "deliberate indifference" to

17   an inmate's health or safety. *Farmer*, 511 U.S. at 834. Under the "deliberate indifference"

18   standard, a prison official cannot be found liable for denying an inmate humane conditions of

19   confinement unless the official knows of and disregards an excessive risk to inmate health or

20   safety. *Id*. at 837. "[T]he official must both be aware of facts from which the inference could be

21   drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Id*.

22       To the extent Plaintiff alleges in the first count of her amended complaint that Defendant

23   Headley violated her Eighth Amendment rights when she had Plaintiff placed in a suicide smock

ORDER DECLINING TO SERVE AMENDED
COMPLAINT AND GRANTING LEAVE TO
FILE SECOND AMENDED COMPLAINT - 8

and strip cell, thereby overriding Plaintiff's IBMP and disregarding the warnings of WCCW

mental health staff, and that these actions resulted in self-harm requiring hospitalization, Plaintiff

has arguably stated a viable claim for relief.  However, Plaintiff has not alleged a viable Eighth

Amendment claim against the remaining Defendants relating to the alleged false infraction.

Plaintiff claims that Defendants set her up on a false infraction so they could place her in solitary

confinement, with knowledge that this would be harmful to Plaintiff's mental health.  However,

Plaintiff's allegations lack sufficient clarity and specificity to demonstrate that Defendants, in

pursuing disciplinary charges against Plaintiff, knew of and disregarded an excessive risk to her

safety.  Plaintiff's allegations are speculative at best and insufficient to implicate Eighth

Amendment concerns.

To the extent Plaintiff alleges in the third count of her complaint that Defendants

Chanler, Swain, Cotton, and Mathews violated her Eighth Amendment rights, Plaintiff has

arguably alleged sufficient facts to implicate Defendants Chanler, Swain, and Mathews in the

violation of her Eighth Amendment rights.  However, the facts alleged with respect to Defendant

Cotton are too vague to state a viable claim for relief.  Plaintiff alleges only that Defendant

Cotton was "made aware" that Defendant Mathews was sexually assaulting Plaintiff and others

and "did nothing," Plaintiff does not explain when or how Defendant Cotton was made aware of

the alleged assaults.  Absent such details, Plaintiff fails to adequately allege a cause of action

against Defendant Cotton.

### 2. *Due Process*

Plaintiff alleges in the second count of her amended complaint that Defendants violated

her Fourteenth Amendment right to due process when they denied her procedural due process in

ORDER DECLINING TO SERVE AMENDED
COMPLAINT AND GRANTING LEAVE TO
FILE SECOND AMENDED COMPLAINT - 9

relation to disciplinary proceedings and in relation to administrative segregation hearings.  Dkt. 12 at 13-20.

The Due Process Clause protects prisoners from being deprived of life, liberty, or property without due process of law.  *Wolff v. McDonnell,* 418 U.S. 539, 556 (1974) (citations omitted).  However, a due process claim under the Fourteenth Amendment can only be maintained where there exists a constitutionally cognizable liberty or property interest with which the state has interfered.  *See Bd. of Regents of State Colls. v. Roth*, 408 U.S. 564, 569 (1972).  The Supreme Court has held that prisoners have "no liberty interest in freedom from state action taken within the sentence imposed," unless such action imposes an "atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life."  *Sandin v. Conner*, 515 U.S. 472, 484 (1995).  "If the hardship is sufficiently significant, then the court must determine whether the procedures used to deprive that liberty satisfied due process."  *Ramirez v. Galaza*, 334 F.3d 850, 86-61 (9th Cir. 2003) (citing *Sandin*, 515 U.S. at 484).

A court may consider the following factors in determining whether a prison hardship is atypical and significant: "1) whether the challenged condition 'mirrored those conditions imposed upon inmates in administrative segregation and protective custody,' and thus comported with the prison's discretionary authority; 2) the duration of the condition, and the degree of restraint imposed; and 3) whether the state's action will invariably affect the duration of the prisoner's sentence."  *Ramirez*, 334 F.3d at 861 (9th Cir. 2003) (citations omitted).

Plaintiff spends considerable time in her amended complaint detailing how she believes her due process rights were violated.  However, she alleges no facts demonstrating that she suffered an "atypical and significant hardship" relating to alleged deficiencies in the disciplinary

ORDER DECLINING TO SERVE AMENDED
COMPLAINT AND GRANTING LEAVE TO
FILE SECOND AMENDED COMPLAINT - 10

1    hearing and administrative segregation hearing processes.  Thus, at this juncture Plaintiff has not

2    establish that she had a cognizable liberty interest entitling her to due process protections.

3                    *3.    Conspiracy*

4            Plaintiff alleges in the fourth count of her amended complaint that Defendants have

5    conspired to violate her rights under the Eighth and Fourteenth Amendments.  Dkt. 12 at 25-29.

6    To establish liability for a conspiracy in an action brought under § 1983, a plaintiff must

7    "demonstrate the existence of an agreement or meeting of the minds" to violate constitutional

8    rights.  *Crowe v. County of San Diego*, 608 F.3d 406, 440 (9th Cir. 2010) (quoting *Mendocino*

9    *Env'tl. Ctr. v. Mendocino County*, 192 F.3d 1283, 1301 (9th Cir. 1999)).  The Ninth Circuit

10   requires a plaintiff alleging a conspiracy to violate civil rights to "state specific facts to support

11   the existence of the claimed conspiracy."  *Olsen v. Idaho State Bd. of Med.*, 363 F.3d 916, 929

12   (9th Cir. 2004) (internal quotation marks and citation omitted) (discussing conspiracy claim

13   under § 1985); *Burns v. County of King*, 883 F.2d 819, 821 (9th Cir. 1989) ("To state a claim for

14   conspiracy to violate one's constitutional rights under section 1983, the plaintiff must state

15   specific facts to support the existence of the claimed conspiracy.").

16           The Court first observes that Plaintiff's allegations in support of her conspiracy claim

17   lack sufficient specificity to demonstrate an agreement among all of the Defendants identified in

18   this claim to violate her constitutional rights.  Simply asserting that all of the named Defendants

19   had an agreement is insufficient to state a viable conspiracy claim.  The Court notes, in

20   particular, that Plaintiff's allegations concerning Defendants Hall, Figuera, Franklin, and Benson

21   are especially vague and do not demonstrate that these individuals participated in any way in the

22   violation of Plaintiff's constitutional rights.

23

The Court also notes that though Plaintiff alleges that Defendants conspired to violate her Fourteenth Amendment rights to due process and equal protection, and her Eighth Amendment right to be free from cruel and unusual punishment, the facts alleged in support of the conspiracy claim appear to pertain only to Plaintiff's underlying claim that she was denied procedural due process in relation to a disciplinary hearing and administrative segregation hearings.  As indicated above, Plaintiff has yet to allege a viable due process claim.  Absent a viable due process claim, any claim that Defendants conspired to violate Plaintiff's due process rights necessarily fails as well.

### 4.    *Equal Protection*

Plaintiff alleges in the fifth count of her amended complaint that Defendants violated her Fourteenth Amendment right to equal protection when they "created, approved, imposed and used DOC Policy 490.700," a policy which Plaintiff claims sets transgender inmates apart from the rest of the prison population and strips away protections and privileges given to the rest of the prison population. Dkt. 12 at 30.  Plaintiff specifically points to a portion of the policy that she claims allows the DOC to remove transgender inmates from prisons that match their gender identity based on safety concerns.  *See id*.  According to Plaintiff, this means that every time a transgender inmate receives an infraction or has a PREA complaint filed against them they have to fear being sent to a prison that does not match their gender identity.  *See id*.  Plaintiff suggests that this constitutes a change in policy, and she claims that this change means she will no longer have the same protections as biological females confined at WCCW who are not at risk of being sent to a men's prison for the same behaviors that could result in her transfer.  *See id*. at 30-32.

The Equal Protection Clause of the Fourteenth Amendment prohibits a state from denying to "any person within its jurisdiction the equal protection of the laws."  U.S. Const.

1    amend. XIV, § 1.  The Equal Protection Clause essentially mandates that state and local

2    governments treat alike all persons who are similarly situated.  *City of Cleburne v. Cleburne*

3    *Living Ctr.*, 473 U.S. 432, 439 (1985).  As a general matter, in order to state an equal protection

4    claim under § 1983, a plaintiff must show that the defendant acted with an intent or purpose to

5    discriminate against the plaintiff based upon membership in a protected class.  *Barren*, 152 F.3d

6    at 1194.

7         "When an equal protection claim is premised on unique treatment rather than on a

8    classification, the Supreme Court has described it as a 'class of one' claim."  *North Pacifica LLC*

9    *v. City of Pacifica*, 526 F.3d 478, 486 (9th Cir. 2008) (citing *Village of Willowbrook v. Olech*,

10   528 U.S. 562, 564 (2000) (per curiam)).  In order to state a class of one claim, a plaintiff must

11   show that the defendant(s) intentionally treated her differently from other similarly situated

12   persons without a rational basis.  *Id.*  To "'be considered similarly situated, the class of one

13   challenger and [her] comparators must be prima facie identical in all relevant respects or directly

14   comparable in all material respects.'"  *Warkentine v. Soria*, 152 F. Supp. 3d 1269, 1294 (E.D.

15   Cal. 2016) (quoting *U.S. v. Moore*, 543 F.3d 891, 896 (7th Cir. 2008)); *see also Nordlinger v.*

16   *Hahn*, 505 U.S. 1, 10 (1992).

17        Plaintiff appears to claim that DOC Policy 490.700 discriminates against her based upon

18   her membership in a protected class, *i.e.*, transgender inmates.  The policy at issue is entitled

19   "Transgender, Intersex, and/or Non-Binary Individuals."  *See* DOC 490.700, *available at*

20   https://www.doc.wa.gov/information/policies.  The stated purpose of that policy is to "establish[

21   ] procedures to ensure equitable treatment of transgender, intersex, and/or non-binary individuals

22   when determining housing, classification, programming, and supervision."  DOC 490.700,

23   Policy Statement I.  The portion of the policy challenged by Plaintiff provides that "Individuals

ORDER DECLINING TO SERVE AMENDED
COMPLAINT AND GRANTING LEAVE TO
FILE SECOND AMENDED COMPLAINT - 13

1   placed in a gender-affirming facility may be transferred to another facility or returned to the

2   originally assigned facility due to documented, objective safety and security concerns."  DOC

3   490.700, Directive VI(G).

4         This policy, on its face, does not reveal any discriminatory intent.  Indeed, the intent of

5   the policy appears to be to ensure the safety and security of all DOC inmates and facilities.  The

6   Court also observes that Plaintiff does not assert that the policy has ever been applied to her.

7   Plaintiff thus fails to allege a viable equal protection claim relating to this policy.  Even

8   assuming Plaintiff were able to assert a viable equal protection claim relating to this policy, she

9   fails to explain how the Defendants she identifies in relation to this claim, aside from Defendant

10  Strange who signed the policy, are in any way responsible for its creation or enforcement.

11  Finally, the Court observes that Plaintiff's suggestion that this policy, which applies to *all*

12  transgender, intersex, and non-binary individuals in DOC custody, was changed specifically to

13  target her and to "get rid of" her is without any factual support in the record.

### III.    CONCLUSION

15        Because of the deficiencies identified above, the Court declines to direct that Plaintiff's

16  amended complaint be served on Defendants.  However, Plaintiff is granted leave to file a

17  second amended complaint curing the noted deficiencies within ***thirty (30) days*** of the date on

18  which this Order is signed.  Plaintiff must ensure that the second amended complaint carries the

19  same case number as her original complaint.  If no second amended complaint is timely filed, or

20  if Plaintiff fails to correct the deficiencies identified above, this Court will recommend that this

21  action be dismissed pursuant to 28 U.S.C. § 1915A(b) and 28 U.S.C. § 1915(e)(2)(B) as to

22  Plaintiff's due process, equal protection and conspiracy claims, and as to the deliberate

23  indifference claims asserted against Defendants McColl, Boschulte, Simmons, and Cotton.  The

ORDER DECLINING TO SERVE AMENDED
COMPLAINT AND GRANTING LEAVE TO
FILE SECOND AMENDED COMPLAINT - 14

Court will further recommend that Plaintiff's deliberate indifference claims against Defendants Headley, Chanler, Swain, and Mathews be allowed to proceed.

Plaintiff is advised that an amended pleading operates as a *complete* substitute for an original pleading. *See Ferdik v. Bonzelet*, 963 F.2d 1258, 1262 (9th Cir. 1992) (citing *Hal Roach Studios, Inc. v. Richard Feiner & Co., Inc.*, 896 F.2d 1542, 1546 (9th Cir. 1990) (as amended)). Thus, any second amended complaint must clearly identify each intended Defendant, the constitutional claim(s) asserted against each Defendant, the specific facts which Plaintiff believes support each claim, and the specific relief requested.

The Clerk is directed to send Plaintiff the appropriate forms so that she may file a second amended complaint.  The Clerk is further directed to send copies of this Order to Plaintiff and to the Honorable John C. Coughenour.

DATED this 25th day of October, 2023.

S. KATE VAUGHAN
United States Magistrate Judge

ORDER DECLINING TO SERVE AMENDED
COMPLAINT AND GRANTING LEAVE TO
FILE SECOND AMENDED COMPLAINT - 15